Mr. Rahimi entered this country as a refugee, and because he was horsewhipped and tortured as a young child by Soviet soldiers, and what he characterizes as their Afghan cronies, the government conceded that Mr. Rahimi must be presumed to be eligible for withholding and removal, and that to rebut that presumption, the government must show a fundamental change in circumstances, but not just any change, a fundamental change in circumstances such that Mr. Rahimi's life or freedom would no longer be threatened there. In finding that the government had failed to rebut that presumption, the immigration judge made several important factual findings. On page 102 of the record, this is in the immigration judge's decision, the immigration made the finding that, quote, Afghanistan is far from being a stable country with a stable government. On page 103, the judge made the finding that remnants from the problems of the Soviet occupation persist today. On page 105 of the record, the judge made the factual finding that returning refugees are robbed, abused, and easily killed. In doing so, he credited Mr. Rahimi's testimony on that point. And then, finally, on page 106, the immigration judge made a very important factual finding, one that goes to the heart of the board's decision. He said, quote, to say that there is control over various factions within the country of Afghanistan is overstatement. Overstating the situation dramatically. Immediately after making that finding about Afghanistan's inability to control the various factions that operate within its borders, the immigration judge concluded that, although the circumstances have changed and that the Russians are out, he said, quote, the dynamics have not changed to such a degree that Mr. Rahimi's fears of harm are unfounded. Now, in reversing that finding, the Board of Immigration Appeals made not one but four distinct legal errors. First, although the BIA held that the destruction and replacement of a government would constitute a fundamental change in circumstance, it never conducted any individualized analysis of how the various changes in government that Afghanistan has undergone would affect the danger that Mr. Rahimi faces from the cronies of the Russians who persecuted him during the era of the Soviet occupation. Did those cronies leave with the Russians? If not, do they continue to have the will and the ability to harm Mr. Rahimi? The government never presented any evidence at all on this point, no evidence that these cronies had departed with the Russians, no evidence that they today lack the will and ability to harm Mr. Rahimi, but the board made no attempt to analyze that lack of evidence. That itself is a legal error. More importantly, although the board did discuss general country conditions, it focused on really two things. First, it focused on the immigration judge's factual finding that Afghanistan is less stable and that the government has only a limited ability to control the various factions that operate within the country, including, presumably, these Afghan cronies who persecuted him during the era of the Soviet occupation. The board reviewed that factual finding de novo, and it said that he was doing it de novo. Did it give any reason why he was doing that? It phrased the issue as simply whether there was a fundamental change in circumstance, but that's not the real test here. The real test is, is there a fundamental change such that this man's threat to his life of freedom would be eliminated? It seems to me that I'd be interested in your comment on this, that it's de novo review because it is, in effect, a mixed question of law and fact. In other words, I didn't see that the BIA was re-reviewing the facts, but saying these are the facts. What is the legal import of that, which is a de novo review? I would agree with the second part of that. But in this case, what the board did is essentially it made two factual findings of its own, and then it didn't give any deference to the factual findings on those very points that the immigration judge had made. And let me give you the two examples. Because the board really, its decision, its analysis here boils down to two things. I mean, the first is this issue about the stability of the Afghan government, and specifically its ability to control the various factions that operate within its border. Now, on that, the immigration judge said very explicitly to say that there is control over the various factions within the country is overstating the situation dramatically. That's a factual finding in and of itself. There's no application of law there. That's a purely factual finding. Now, the board took that, and they said, quote, while the immigration judge, and this is on page 40 of the record, while the immigration judge took note of aspects of Afghanistan's instability in certain areas, we assign greater weight to that portion of the State Department country report recounting the country's progress with its burgeoning democracy and self-governance. And then it concluded by saying, while there are unstable regions in the country, there's great progress being made toward the establishment of a stable democracy. Well, whether Afghanistan is stable or unstable, and more importantly, whether it has the ability to control the various factions that operate within its country, that's not a legal question. That's not a mixed question of law. That's a purely factual question. And on that particular, that factual question, the board should have been reviewing the immigration judge with clear air. I'm having some trouble with this, just trying to – it seems to me that the judge is – the BIA is taking statements from the record, which is what the I.J. found, plus the country report. Let me just ask you the general proposition. Assuming that there's three facts that are undisputed, and then there's a country report, in your view, does the BIA have the authority to take the three facts plus the country report, which becomes facts? The three facts that are undisputed. Yeah, they're undisputed, and then you have a country report. Can the BIA take that and say, we look at all of this, which is essentially undisputed, but I give more weight to fact one and the country report, for example? Can they do that? Well, it seems to me, in certain situations, the question could be a mixed question of law and fact. And in such cases, the board has to sort of distinguish nowadays between which parts are factual and which parts are legal. Insofar as there are factual findings that the immigration judge made, the board has to defer to them. Now, on this particular point, I would refer you to the Eighth Circuit's recent decision in this case called Nabowala, because in our view, it's exactly the same case on this first point. There, the issue was very similar to this. The court held that whether the government was unable or unwilling to control persons who had harmed or would harm the petitioner is a factual question, a purely factual question that the BIA must review under the clearly erroneous standard. It doesn't get to decide that question in the first instance. But I guess where did they decide a question here as opposed to taking the undisputed facts and making a judgment about them? The difference of opinion here is, on the one hand, the immigration judge is saying essentially that, quite clearly, actually, that Afghanistan is stable, is unstable, excuse me, and they lack the ability to control these various factions. And the board rejected that. The second point that it rejected goes to whether Mr. Rahimi's long-term absence from Afghanistan makes him safer or not. That's the only other fact that the board relied upon to argue that the government had rebutted the presumption here. But the immigration judge made the exact opposite factual finding. He said, he credited Mr. Rahimi's testimony that returning refugees are robbed, abused, and easily killed. And in doing so, he also cited to what's now on page 365 of the record that says, recent human rights reports by Human Rights Watch and the U.N. Commission for Refugees show that many returning refugees face serious human rights abuses. The board used the absence in the exact opposite way. It didn't credit that factual finding at all, that returning refugees are persecuted. It said, because he's been gone from the country for 16 years, in fact, it was 20, he's going to be safer. Well, the immigration judge said the opposite. He said that because he's been gone and he's going to be a returning refugee, he's in greater danger. That's a factual finding. It's a purely factual finding. Isn't that a question of the BIA having failed to make an individualized determination, isn't it? No. It's the BIA failing to credit the factual determinations of the immigration judge. It can take those factual determinations and then apply the law to them and come to a different conclusion. But it doesn't get to make its own factual determinations, at least not anymore. Now, when an immigration judge makes a factual determination like this one, that somebody who's a refugee and was lived abroad for a long period of time and now returning, that person's in danger, greater danger. The BIA doesn't get to say, we're doing that record de novo. No, actually, he's in less danger. They have to credit the immigration judge's factual determinations, and they can only reverse those for clear air. Where do they discredit that? That's just what I'm looking at here. Well, look at the decision. They use only these two factors to say that the presumption's better but. And what they say here is he's not residing in Afghanistan for over 16 years. And they use that to actually show that the presumption has been rebutted. But the immigration judge is using that to support his conclusion that it had not been rebutted. So they're essentially using the same fact. The BIA, the immigration judge is saying, well, this strengthens this direction of this case. And the Board of Immigration Appeals is saying, no, actually, that fact weakens this case. And that – the board just doesn't get to do that. If an immigration judge makes a factual finding that a certain factor makes it more likely that this guy's going to suffer harm, the BIA has to give that some deference because the judges nowadays, they get to make the factual findings. I see that I'm out of time here. If there are no further questions. Well, what about his conviction? Well, Your Honor, unfortunately, he was pro se throughout this proceeding. And we're only representing him on a pro bono basis just to make sure he gets an argument before this Court. But he, while he was represented pro bono, he admitted to having a conviction. The conviction records, if you look at them, they don't actually identify what penal code section he was convicted under. The NTA says he was convicted under 261.5. The judge asked him. He said he was convicted under 261.5 without identifying what subsection. The one probation document actually says it was 262.5. The records, it's completely unclear. But when he was unrepresented without counsel, the immigration judge never told him that he could deny the allegations and put the government to its burden of proof. The judge asked him, point blank, were you convicted of this crime? And he just said, yeah. So that hasn't been challenged. It wasn't challenged before the BIA. It hasn't been challenged before this Court. But obviously, in terms of your jurisdiction, it's something that you could review yourself because you have an obligation to consider your own jurisdiction. Thank you. Good morning. May it please the Court. My name is James Grimes. I'm here on behalf of the Attorney General. Your Honors, as my esteemed colleague pointed out this morning, Additionally, he entered this country in 1987 as a refugee. He had shown past persecution by the Soviet Army on account of an imputed political opinion. I believe it was his father's opposition to the Soviet invasion. So he did benefit from a presumption below that he would be persecuted in the future by the Soviet Army on the same ground that he established when he entered the country. Obviously, whatever standard of review the Board applies, the government rebutted that presumption because the Soviets are no longer around. The Soviet puppet state, the Najibullah regime, was ousted by force of arms, as the record reflects at page 296. So that leaves his separate new claim, which has to do with whether or not he'll be persecuted on account of his ethnicity and his time away from Afghanistan. He doesn't benefit from a presumption as to that issue, but as we addressed in our brief in our motion to remand, the Board did not address that claim. And the factors that the Board was looking to really go to, they don't really go to that issue. The factors the Board was discussing, the burgeoning democracy, his time away, that is his claim. I don't know that that can, that that actually answers that question. Well, is there a burgeoning democracy? Well, that's what the, I suppose that's what we're trying to establish over there. Do you believe there is one? Well, I'm not sure exactly what the status is on the ground there at this point, Your Honor. If you look to the country reports, you know, there, it's a difficult situation at this point. But certainly that goes to whether or not he has, he can show that he will be persecuted on account of his ethnicity or time away from Afghanistan. The Board needs to address that in the first instance. You agree it needs to be remanded at least for the third issue? Yes, Your Honor. And we ask that the Court do. Yes, we ask the Court do that. The motions panel denied that motion. We're renewing that request here today because the Board didn't address that issue. Did the BIA review this de novo as claimed by the motion? Well, let me see if I can answer. The BIA reviewed the judgment of whether or not he will be persecuted on account of his imputed opinion of opposition to the Soviets de novo. And I invite the Court's attention to the regulation at 8 CFR 1003.1 D3 III. That regulation says that the Board reviews questions of law, judgment, and discretion de novo. And so the terms judgment and discretion have distinct meanings. So if you then go to the supplementary information in the Federal Register, which we cited in our brief, you can see that what the Attorney General is talking about when he says judgment is was this alien, the ultimate question, was this alien persecuted? Will he be persecuted? Was that persecution on account of a particular ground? And that is what the Board was looking at there. It took the facts, as the Court has pointed out, took the facts and said our determination is that the armed destruction removal of the previous regime is a fundamental change in circumstances, and under the regulation, the Board is entitled to do that. But now Mr. Joe says that in doing that, that the Board, in effect, went further by discounting or ignoring specific facts made by the immigration judge. Well, I guess I would disagree that the Board ignored the facts. As Mr. Joe pointed out, page 106, the immigration judge said the Soviets are gone. That's the key factor as to his past persecution and the presumption that would arise as a result of that. I believe the cronies that he refers to would be the Najibullah regime, and as the record reflects in page 296, the Najibullah regime was forced out by force of arms by the Mujahideen. So I believe that the Board would be entitled to do that under this regulation. But even if the Board were to be sustained in finding that there was a fundamental change in circumstances, they haven't done a particularized analysis as to him. As to the new claim, that's correct. As to his claim of whether or not he would be subject to it. They're required to do that, aren't they? Well, that's one of the reasons we asked the court to remand, because the reason we get a lot of these appeals is that they sometimes their work is sloppy. This is not the agency's finest hour, Your Honor. I think the immigration judge sort of confused the new issue with the old issue, and the Board did the same. The Board got it right as to the rebutting, the presumption, because obviously the Soviets and the Soviet public state is gone. But then the ---- Who represented the government before the Board? It would have been the Immigration and Customs Enforcement attorney from that agency. Well, they're supposed to be up on the law and call any deficiencies to the attention of the Board, are they not? Well, I ---- As I said, Your Honor, this is not the agency's finest hour. This could have been done much better. The Board could have addressed the issue. We've asked that the court return this case to the Board. When are we going to see the agency's finest hour? I'm sorry, Your Honor? When are we going to see their finest hour? Well, you're not seeing it here, Your Honor. I don't know if I can answer that. But we would ask that you remand as to the new claim and dismiss or deny as to the previous claim and dismiss or deny as to the regulatory claim, because the Board was entitled to act in this fashion as to the rebutting that past claim. And if there are no further questions, thank you for your time. What is that lapel pin you have on? That's the Navy and Marine Corps accommodation level, Your Honor. Well, good for you. Thank you, Your Honor. I'm out of time, Your Honor. That's all right. We give lots of time. There's nothing about judgment in the Board's decision here. When the regulations are talking about judgment, they're talking about the Board sort of fleshing out and applying a sort of ambiguous legal standard to the facts. But here there's no ambiguous legal standard being applied. What's at issue here is a purely factual question. There's no issue about is it on account of, is it persecution. The issue is have the persecutors lost the will and ability to harm this man. And the Board said they had, and they rested that conclusion on purely two factual assertions, that it's he, the fact that he was absent for 16 years makes him safer. That's a factual assertion. And the second thing is that they said the Afghan government now has the ability to exercise control because it's becoming a stable government. Again, a factual assertion. Those are two purely factual issues. They don't say that, Mr. Jones. They don't say that they have the ability to exercise control. Well, I'm, let's contrast what the judge said, Your Honor, that it's a. Well, where is that? Well, but I'm just saying we have to be careful because I know what the IJ said. Yeah. Trying to see what the BIA said. Well, what they said, I mean, because the contrast is pretty stark. The immigration judge said to say that there is control over various factions within the country is overstating the situation dramatically. And he said. You have to enunciate each word. Okay. Sorry, Your Honor. Sorry. The BIA said, quote, to stay, to say that there is control over various factions within the country is overstating the situation dramatically. And it said, Afghanistan is far from being a stable country with a stable government. Those are the two factual findings from the judge. The BIA, on the other hand, didn't give those any deference at all. It said, while the immigration judge. Where did they say that? This is on page 40 of the record, and it's in that second paragraph. Second full paragraph? Yeah, the second full paragraph. There are two relevant. How many lines down from the top? Yeah, it's right toward the middle, it begins. There are two relevant sentences. Because this is the extent of their entire analysis. While the immigration judge took note of aspects of Afghanistan's instability in certain areas, we assign greater weight. That's determining. That's a factual thing. We assign greater weight to that portion of the State Department country report, recounting the country's progress in its burgeoning democracy and self-governance. And then it goes on to say, in the next sentence, while there are unstable regions in the country, there is great progress being made toward the establishment of a stable democracy. They're choosing, you know, to emphasize the stability that the judge said it doesn't exist. And essentially, they're displanting the judge's factual findings and making their own. And they just they're not allowed to do that. It would be different if they were really talking about, you know, applying law here to factual determination.  Ginsburg. In a practical matter, if you think that they have improperly assigned facts or, in effect, made their own fact-finding or ignored the IJs, the remedy that it goes back and then on this record they redo the changed circumstances. Right. Situation. And if they come to the same conclusion and they cite all the facts, they still would have to have a particularized finding. Right. It has to go back. They have to do a particularized analysis. And they have to give the appropriate deference to the factual findings of the immigration judge. Because the law, the regulations are clear. They don't get to make factual findings in the first instance. And what I'm saying is, that's precisely what they did here. And do you think if they had, again, we're back to this, what does this mean, greater weight? If they have various facts, plus they have the country report, can the BIA on appeal give greater weight to one or the other of the facts in making its legal determination? You know, that's an unclear question. But I think the answer to that is if they think that the immigration judge's factual finding about the stability of the government might be offset by some other part of the country report, I think under their current system they've got to remand it and ask the judge to decide that. Because the judge gets to make that factual determination in the first instance. Thank you. Thank you.
judges: Pregerson, Siler, McKeown